RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0212p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                              No. 12-3273

    *v.*

ROBIN DEAN RILEY, JR.,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:97-cr-89-1—David D. Dowd, District Judge.

Argued: March 5, 2013

Decided and Filed: August 9, 2013

Before: BOGGS, MOORE, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Phillip J. Tripi, U.S. ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jeffrey B. Lazarus, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant. Phillip J. Tripi, U.S. ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

**OPINION**

_____

BOGGS, Circuit Judge. In 1997, appellant Robin Riley pled guilty to possession, with intent to distribute, of 53.17 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and was sentenced to 262 months of imprisonment and ten years of supervised release. Following the Fair Sentencing Act of 2010 and the corresponding crack-cocaine guideline amendments implemented by U.S.S.G.

Amendment 750, Riley moved for a sentence reduction under 18 U.S.C. § 3582(c)(2). The district court denied Riley's motion, and Riley now appeals. For the reasons that follow, we affirm the district court's order.

## I

Riley pled guilty to possession, with intent to distribute, of 53.17 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). At the time of Riley's sentencing in 1997, the statutory maximum penalty for this crime was life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A) (1997), though the statutory maximum has since been reduced by the Fair Sentencing Act of 2010 to 40 years of imprisonment, *see* 21 U.S.C. § 841(b)(1)(B) (2012). Had Riley *not* been a career offender, the district court would have used the drug-quantity table in U.S.S.G. § 2D1.1 to determine the base offense level for Riley's violation of 21 U.S.C. § 841, which, at the time of Riley's sentencing, was 32, *see* U.S.S.G. § 2D1.1(c) (1996), but which, after the 2011 changes made by U.S.S.G. Amendment 750, is now set at 26, *see* U.S.S.G. § 2D1.1(c) (2012). However, because Riley *was* sentenced as a career offender, he was subject to U.S.S.G. § 4B1.1, which states that "if the offense level for a career offender from the table in this subsection is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply." The table in § 4B1.1 indicates that if the offense of conviction has a statutory maximum penalty of life imprisonment, the career offender's offense level should be set at 37.

As mentioned above, Riley's crime of conviction carried a statutory maximum penalty of life imprisonment at the time of his sentencing. His plea agreement therefore stated that "[b]ased on the foregoing stipulated facts and the following guideline provisions, the parties agree to recommend to the Court that the defendant's 'base offense level' for Count 1 is '37' [§4B1.1(A)]." Riley Plea Agreement at 4 (bracketed material in original). In addition, the plea agreement allowed Riley to reserve "the right at the time of sentencing to challenge his status as a career offender," though it did not provide for an alternative sentence in the event that Riley's challenge was successful. *Ibid*. The plea agreement referenced no sentencing guideline other than § 4B1.1.

At sentencing, Riley's challenge to his career-offender status was unsuccessful, and the district judge, after reducing Riley's base offense level by three for acceptance of responsibility, in accordance with the government's recommendation in the plea agreement, assigned Riley a base offense level of 34 and a criminal history category of VI.  Accordingly, Riley's guideline range was set at 262 to 327 months of imprisonment. The district judge, after expressing disdain for what he felt to be the "excessive" length of Riley's sentence, sentenced him to 262 months of imprisonment, the low end of the guideline range.

Following the 2011 crack-cocaine guideline amendments, *see* U.S.S.G. Amend. 750, the United States Probation Department assessed Riley's eligibility for a sentence reduction and concluded that he was not eligible.  After reviewing this recommendation, the district court agreed that Riley was not eligible for a reduction but allowed Riley the opportunity to challenge the Probation Department's findings.  In response, Riley filed a brief seeking to have his sentence reduced to 120 months of imprisonment, which would allow for his immediate release.  The district court denied Riley's motion for a sentence reduction, holding that Riley's "prior determined status as a career offender precludes application of Amendment 750 to his previous sentence of 262 months." Riley now appeals.

## II

Normally, this court reviews a district court's denial of a motion to modify a sentence under 18 U.S.C. § 3582(c)(2) for abuse of discretion.  *See United States v. Moore*, 582 F.3d 641, 644 (6th Cir. 2009).  Where a district court concludes that it lacks the authority under 18 U.S.C. § 3582(c)(2) to reduce a defendant's sentence, however, such a conclusion is a question of law that this court reviews de novo.  *See United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).  Because the district court in the instant case clearly indicated that it "would [have] re-sentence[d] the defendant to a sentence of 120 months" but that it could not do so because "defendant's prior determined status as a career offender precludes application of Amendment 750 to his previous sentence of 262

months," the latter standard of review is implicated, and we review the district court's conclusion de novo.

**III**

Under 18 U.S.C. § 3582(c)(2), a defendant is eligible for a sentence reduction if: (1) the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission"; and (2) such reduction is "consistent with applicable policy statements issued by the Sentencing Commission." We have clarified that to satisfy the second requirement, "a guidelines amendment must 'have the effect of lowering the defendant's applicable guideline range.'" *United States v. Hameed*, 614 F.3d 259, 269 (6th Cir. 2010) (quoting U.S.S.G. § 1B1.10(a)(2)(B)); *see also United States v. Pembrook*, 609 F.3d 381, 383 (6th Cir. 2010). The primary issue in the instant appeal, however, is whether Riley has satisfied the first element of the sentence-reduction test, i.e., whether his original sentence was "based on" a sentencing range that has subsequently been lowered. Riley argues that his sentence was based, at least in part, on the guideline range prescribed by U.S.S.G. § 2D1.1, the crack-cocaine guideline that was altered in 2011 by Amendment 750, while the government contends that his sentence was based solely on the guideline range in U.S.S.G. § 4B1.1, the career-offender guideline that remains unaltered.

In *United States v. Perdue*, 572 F.3d 288 (6th Cir. 2009), this court dealt with a prisoner who, like Riley, was sentenced as a career-offender under § 4B1.1. The defendant argued that Amendment 706, a 2007 retroactive amendment that lowered the base offense levels in § 2D1.1 for most crack-cocaine offenses, made him eligible for a sentence reduction. In response, we held that "a district court may not grant a motion for a reduction in sentence premised upon Amendment 706 if the defendant seeking the reduction was originally sentenced as a career offender." *Id*. at 292. We reached this conclusion by noting that the defendant's "sentence was based on the guideline ranges applicable to career offenders under § 4B1.1" and that "[t]he alternative base offense level under § 2D1.1 ultimately did not affect the calculation of the sentencing range under the career offender classification, § 4B1.1." *Id*. at 292–93; *see also United States*

*v. Sheldon Williams*, 607 F.3d 1123, 1125–26 (6th Cir. 2010) (holding, in the context of an Amendment 706 sentence-reduction proceeding, that the § 4B1.1 sentence of a career-offender defendant was not "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" (quoting 18 U.S.C. § 3582(c)(2))).  In so holding, *Perdue* also noted that many of our sister circuits explicitly agreed with our view that a career offender's sentence was based on a guideline range prescribed by § 4B1.1 and not on the subsequently amended ranges in § 2D1.1.  *See Perdue*, 572 F.3d at 292 (collecting cases).

We recently reaffirmed the logic of *Perdue*, as applied to Amendment 750, in *United States v. Tillman*, 511 F. App'x 519, 521 (6th Cir. 2013), holding that "[a]lthough Amendment 750 is retroactive, it cannot benefit [a defendant whose] sentence was derived from his status as a career offender, rather than from the quantity of drugs for which he was held responsible[,] . . . because that amendment did not lower the career offender sentencing guidelines range."  In short, Amendment 750 altered only the § 2D1.1 guideline ranges, but the sentences of career offenders under § 4B.1.1 are not based on the § 2D1.1 ranges.[1]

Riley argues that the Supreme Court's decision in *United States v. Freeman*, 131 S. Ct. 2685 (2011), redefined the term "based on" and ascribed to it a much broader meaning than this circuit's earlier holdings.  In *Freeman*, the Supreme Court analyzed whether a sentence agreed on in a binding Rule 11(c)(1)(C) plea agreement was properly considered as based only on the plea agreement itself or also as based on a sentencing-guideline range that was referenced in the agreement.  A four-justice plurality of the court held that "§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in

---

[1] While it is true that a district court must first calculate a defendant's § 2D1.1 guideline range to determine that the alternative range in § 4B1.1 is greater and therefore applicable, we have consistently held that such a preliminary calculation does not make a final sentence "based on" the § 2D1.1 guidelines for sentence-reduction purposes.  *See Hameed*, 614 F.3d at 262 (holding that "a district judge's mere calculation of the sentencing range under § 2D1.1 does not render a defendant's sentence 'based on' the crack guidelines range if that range is subsequently trumped by another provision of the guidelines"); *see also United States v. Bryan Williams*, 512 F. App'x 594, 599 (6th Cir. 2013) (a post-*Freeman* case citing *Hameed* for the same proposition).

question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Id*. at 2692–93. In other words, the plurality would consider a sentence "based on" a specific guideline range if that guideline range played some part in the sentencing analysis, and it would allow a sentence reduction to the extent that such reduction "isolate[d] whatever marginal effect the since-rejected Guideline had on the defendant's sentence." *Id*. at 2692.

The controlling rule from the *Freeman* opinion, however, is not that of the four-justice plurality, as Riley claims, but the narrower concurring opinion of Justice Sotomayor. *See United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011) ("Justice Sotomayor's opinion is the narrowest ground for the Court's decision and thus represents the Court's holding in *Freeman*."); *see also Freeman*, 131 S. Ct. at 2704 (Roberts, C.J., dissenting) (acknowledging that Justice Sotomayor's concurrence would be applicable moving forward). *See generally Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . ." (alteration in original) (internal quotation marks omitted)). In her concurring opinion, Justice Sotomayor held that "the term of imprisonment imposed pursuant to [an 11(c)(1)(C)] agreement is, for purposes of § 3582(c)(2), 'based on' the agreement itself" unless "a (C) agreement expressly uses a Guidelines sentencing range to establish the term of imprisonment, and that range is subsequently lowered by the Commission." *Freeman*, 131 S. Ct. at 2696–98 (Sotomayor, J., concurring). She specifically noted that "the mere fact that the parties to [an 11(c)(1)(C)] agreement *may have considered* the Guidelines in the course of their negotiations does not empower the court under § 3582(c)(2) to reduce the term of imprisonment they ultimately agreed upon." *Id*. at 2697 (emphasis added).

*Freeman* is instructive in this case, though not in the way Riley suggests. *Freeman*, which specifically dealt with the definition of "based on" in the plea-agreement context, indicates that five justices can agree, at most, that a defendant's

sentence is "based on" a guideline range only when that guideline range is explicitly referenced in a plea agreement and expressly relied upon to determine a defendant's sentence.  In Riley's case, however, his plea agreement nowhere references U.S.S.G. § 2D1.1.  The relevant portion of the plea agreement states:

> Defendant understands the Government's position that he is punishable as a career offender pursuant to U.S.S.G. Section 4B1.1 as a result of those pleas of guilty as set forth herein.  However, the Defendant reserves the right at the time of sentencing to challenge his status a [sic] career offender.
>
> Based on the foregoing stipulated facts and the following guideline provisions, the parties agree to recommend to the Court that the defendant's "base offense level" for Count 1 is "37" [§4B1.1(A)].
> . . .
> [T]he Government will agree to recommend to the court that the defendant's base level offense be reduced by three (3) levels for acceptance of responsibility, resulting in an adjusted base level offense [sic] of "34".
> . . .
> The defendant understands that the defendant's criminal history will be determined by the Court after an investigation by the Federal Probation Department, but recognizes that in the [sic] all cases where the defendant is sentenced as a career offender pursuant to U.S.S.G. §4B1.1 that [sic] the criminal history in every such case is "VI".
> . . .
> Based upon the provisions of [the preceding paragraphs], the parties agree that the offense level is 34, criminal history VI and the appropriate sentence is 262 months.

Riley Plea Agreement at 4–6.  Clearly, Riley's plea agreement does not "expressly use [§ 2D1.1] to establish the term of imprisonment" and thus is not "based on" § 2D1.1 under the definition put forward by Justice Sotomayor in *Freeman*.  *Freeman*, 131 S. Ct. at 2698 (Sotomayor, J., concurring).  Because Amendment 750 only altered the guideline ranges in § 2D1.1, but left those in § 4B1.1 unaltered, Riley's inability to establish that his claim was "based on" § 2D1.1 is fatal to his sentence-reduction appeal.

In addition, Riley's reliance on this circuit's decision in *United States v. Jackson*, 678 F.3d 442 (6th Cir. 2012), is equally misplaced.  In that case, the defendant qualified as a career offender; thus his guideline range was 188 to 235 months of imprisonment.

*Id*. at 443. The district court delayed Jackson's sentencing in anticipation of the Fair Sentencing Act's passage but eventually determined that it could wait no longer and sentenced Jackson under the pre-Amendment 750 guidelines. *Ibid*. Noting its extreme displeasure with the disparity between sentences for crack- versus powder-cocaine offenses, however, the district court varied downward to a 150-month sentence, a term that was within the § 2D1.1 guideline range that would have applied had Jackson not been a career offender. *Ibid*. On direct appeal, this court held that Jackson's sentence *was* based on his § 2D1.1 crack-cocaine guideline range, stating that "[i]f a sentencing judge, having found a defendant to be a career offender, then decides to sentence defendant below the range for career offenders and notes his policy disagreement with the crack cocaine guidelines, . . . the sentence was as much 'based on' the crack cocaine guidelines as the career offender guidelines." *Id*. at 445. In particular, the panel felt that "[b]ecause the issue was raised on direct appeal and Amendment 750 was made retroactive during the pendency of the appeal," Jackson's particular case required "remand . . . to the district court to allow it in the first instance to consider whether, in the exercise of its discretion, the revised and retroactive crack cocaine guidelines should be considered in determining Jackson's sentence." *Ibid*.

Riley's case is clearly distinguishable. Most importantly, Riley's case does not come to us in the unusual procedural posture of Jackson's—a direct appeal in the immediate wake of the Fair Sentencing Act after a district judge explicitly delayed sentencing in hopes of the Act's imminent passage. While this court found remand appropriate in the unique setting where "Amendment 750 was made retroactive during the pendency of [Jackson's direct] appeal," *ibid*., to employ the same tactic in a proceeding for the reduction of a sentence imposed over 15 years ago would not only rip *Jackson* from its contextual moorings, but would also conflict with our pre- and post-*Jackson* case law indicating that career offenders are not eligible for sentence reduction under Amendment 750 and similar amendments. *See, e.g.*, *Tillman*, 511 F. App'x at 521; *Sheldon Williams*, 607 F.3d at 1125–26; *Perdue*, 572 F.3d at 292–93.

**IV**

Finally, having determined that Riley's sentence was not "based on" § 2D1.1 and thus that he is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2), we need not determine whether, as Riley asserts, the FSA applies retroactively during sentence-reduction proceedings, in contrast to re-sentencing proceedings.

**V**

For the foregoing reasons, we AFFIRM the district court's order denying Riley's motion for a sentence reduction.