RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 12-2546

*v.*

MALCOLM GARRETT, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit
No. 2:09-cr-20123-001—Julian A. Cook, Jr., District Judge.

Decided and Filed:  July 14, 2014

Before: BOGGS, COLE, and McKEAGUE, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  Bradley R. Hall, James R. Gerometta, FEDERAL DEFENDER OFFICE, Detroit, Michigan, for Appellant.  Kevin M. Mulcahy, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

───────────────

**OPINION**

───────────────

BOGGS, Circuit Judge.  After entering into a Rule 11(c)(1)(C) plea agreement with the government, Malcolm Garrett pleaded guilty to one count of conspiracy to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii).  The district court sentenced Garrett to 151 months of imprisonment, which was the bottom end of his guideline range as calculated in his PSR and agreed to by the parties in Garrett's plea agreement. Garrett argues that he is eligible for resentencing under 18 U.S.C. § 3582(c)(2) because his

1

original sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" and because a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." *See* 18 U.S.C. § 3582(c)(2). The district court held that Garrett was ineligible for resentencing. We reverse and remand for further proceedings.

# I

Garrett's plea agreement contains one section pertaining to the calculation of his guideline range ("Sentencing Guidelines") and another section pertaining to his sentence ("Sentence"). The Sentencing Guidelines section identifies an "Agreed Guideline Range" of 151–188 months. It further provides that if the district court finds a) that Garrett's criminal history category is higher or lower than that arrived at in the agreement or b) that the offense level should be higher for certain specified reasons (e.g., obstruction of justice following his plea), and the change results in a new guideline range, "the higher or lower guideline range becomes the agreed [guideline] range." Certain other district-court findings would "*not* authorize a corresponding increase in the agreed range," such as a finding that Garrett was an armed career criminal. The Sentence section of the agreement discusses limitations on the sentence to be imposed by the district court. Under the agreement, Garrett's sentence could not exceed the top of the agreed-upon sentencing-guideline range (188 months in the absence of any permitted modifications). And, in keeping with applicable law, the parties acknowledged the district court's obligation to impose a mandatory minimum sentence of 120 months.

At sentencing, the district court explained the sentence that it imposed, in relevant part, as follows:

> The Court having examined the parties's [*sic*] proposed Rule Eleven Plea Agreement to which reference has been made today and last week, I will accept the provisions therein which provide in pertinent part that the guideline range of 151 to 188 months should be applied. The parties's [*sic*] proposed Rule Eleven Plea Agreement also provided in part that, quote, the Court will impose a sentence pursuant to Title 18 United States Code Section 3553, and in doing so, must consider the sentencing guideline range. . . .

> With regard to the issue of the disparity between crack cocaine and powder cocaine, Mr. Feller is correct in the current status of the law and the policy of the

United States Government through its Attorney General's Office. I believe that the disparity should be a one to one and thus will make my ruling on that basis.

In looking over the Presentence Investigation Report I note with great alarm the involvement of Mr. Garrett with the Criminal Justice System, beginning in June of 1998. . . .

Having made the judgment with regard to the crack versus powder cocaine, that in my opinion results in an sentencing guideline range of 41 to 51 months. However, I do note that there is a current disparity between that sentencing guideline range and the mandatory minimum of imprisonment of ten years or 120 months in this case.

That then would bring the total offense level to 15 with a Criminal History Category of six.

I note while recognizing Mr. Garrett's very unfortunate upbringing, including what he, Mr. Garrett, describes as his mother's substance abuse problems, it nevertheless troubles me that . . . he has done an awful lot and has had a lot of contact with the Criminal Justice System in a relatively short period of time. It is an extremely unenviable lifestyle that he has led.

And so with the 120 months that I must impose under the mandatory statutory term of imprisonment, I believe that a variance is necessary. And in so doing I will increase the figure from the 121 [*sic*] months to the minimum that was agreed upon by the parties in their Rule 11 Plea Agreement, namely, 151 months.

I do so because one of the factors that I am employing here is deterrence. Mr. Garrett has repeatedly violated the law and has violated his responsibilities as a significant law-abiding player in this community.

In summary, the plea agreement provided for a guideline range of 151–188 months, and the district court sentenced Garrett to 151 months after a) agreeing that the range provided in the agreement "should be applied," b) nevertheless finding "that the disparity [between the guidelines for crack and powder cocaine] should be one to one" and arriving at a range of 41–51 months on that basis, c) finding that the mandatory minimum of 120 months trumped that range, and d) imposing a "variance," for purposes of deterrence, adding 31 months on top of the mandatory minimum to bring the sentence back up to "the minimum that was agreed upon by the parties."

On March 12, 2012, Garrett moved the district court for a sentence reduction under 18 U.S.C. § 3582(c)(2), relying on Amendment 750, as amended by Amendment 759, to the Sentencing Guidelines. Amendment 750 lowered the guideline ranges applicable to crack-cocaine offenses, and Amendment 759 made parts of Amendment 750 available for retroactive

application to defendants sentenced under the prior regime.  The district court denied the motion on the ground that the court had "applied a guidelines range of 120 months," which range had not been lowered by Amendment 750.

## II

18 U.S.C. § 3582(c)(2) provides that a court may modify a defendant's sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

There are thus two questions—first, whether Garrett's sentence was "based on" a sentencing range that was subsequently lowered by the Sentencing Commission, and second, whether a reduction would be consistent with the Sentencing Commission's policy statements. Because the second question is more straightforward, we address it first.

## A

The question is whether a reduction in Garrett's sentence would be consistent with the Sentencing Commission's policy statements.  The government argues that the district court applied a guideline range of "120 months, which represented the statutory mandatory minimum sentence at the time," and that Amendment 750 did not lower that range.  Appellee's Br. at 4.  As a result, the government contends that a sentence reduction would be inconsistent with the Sentencing Commission's policy statement at § 1B1.10(a)(2)(B) of the Guidelines, which provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement" if the relevant amendment "does not have the effect of lowering the defendant's applicable guideline range."

The government is correct that Amendment 750 did not and could not lower the statutory mandatory minimum sentence.  But the question is whether it lowered Garrett's *applicable* guideline range—that is, the range that was applicable to him *under the Guidelines*; not the range, if any, upon which his sentence was ultimately based.  We have thoroughly discussed the meaning of the phrase "applicable guideline range" and have expressly held that "a defendant's guideline range is the range produced under the guidelines' sentencing table after a *correct*

determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." *United States v. Pembrook*, 609 F.3d 381, 385 (6th Cir. 2010) (emphasis added) (citations and quotation marks omitted).  Further, the Guidelines commentary has been amended to clarify and affirm this point: the "applicable guideline range" is "the guideline range that corresponds to the offense level and criminal history category determined pursuant to §1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual or any variance." U.S.S.G. § 1B1.10, Application Note 1.

Here, the plea agreement stated that, under the Guidelines, Garrett's total offense level and criminal history category combined to produce a guideline range of 151–188 months.  The district court agreed with that calculation.  The district court thereafter decided to actually apply a different range for policy reasons—i.e., it applied what it believed was the proper range for powder-cocaine offenses, rather than the range *actually applicable* to Garrett's crack-cocaine offense under the Guidelines.  That decision should probably be characterized as a "variance" from the Guidelines, since it was not provided for under the Guidelines.  But even if it may in some way be considered a "departure" under the Guidelines, any departure would have no effect on Garrett's "applicable guideline range," which is the range "that applied before the sentencing court decided to depart or vary." *Pembrook*, 609 F.3d at 384–85.  The "applicable guideline range" is not discretionary, and it does not vary from one court to another.  The "applicable guideline range" under the Guidelines certainly cannot be changed by a policy *disagreement* with the Guidelines.  And the application of the 120-month mandatory minimum, even if considered a part of the process of calculating Garrett's applicable guideline range, would have had no effect on that range, since 120 months is below the bottom end of Garrett's "applicable guideline range" of 151–188 months. *See* U.S.S.G. § 5G1.1.

The question, then, is whether Amendment 750 had the effect of lowering Garrett's applicable guideline range, and the answer is yes.  Garrett's applicable guideline range, as stated in his plea agreement, was based on a total offense level of 29 and a criminal history category of VI.  In his motion for a sentence reduction, Garrett contended, and the government does not appear to dispute, that applying Amendment 750 would reduce his total offense level to 25.  That reduction would have the effect of lowering his applicable guideline range to 110–137 months before application of the mandatory minimum, and to 120–137 months after applying the

minimum.  Whether the minimum is included as part of the "applicable guideline range" or not, it is clear that Amendment 750 would "have the effect of lowering" Garrett's "applicable guideline range" from its original level, prior to the amendment, of 151–188 months.

**B**

The more difficult question is whether Garrett's *actual sentence* was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  Here, the question is not how Garrett's guideline range was or should have been calculated; rather, the question is whether the sentence actually imposed was "based on" a sentencing range that was subsequently lowered.  Put differently, the question is whether Garrett's original sentence would have been different had the guideline, as amended, been in place at the time he was originally sentenced.

In the government's view, Garrett's sentence was not actually based on a sentencing range that was subsequently lowered by the Commission; rather, it was based on a different guideline range—namely, that for powder cocaine—and the application of a mandatory minimum on top of that range, to move it *up* to a "range" of 120 months.  The sentence was further enhanced 31 months for deterrence purposes.  This view has significant support in the language that the district court used at sentencing to explain its sentence.  On the other hand, it would seem to entail the implausible inference that the district court arrived at a sentence of 151 months by sheer coincidence—i.e. that the court would have arrived at the same sentence even had the sentence not represented what the court termed "the minimum that was agreed upon by the parties in their Rule 11 Plea Agreement, namely, 151 months."  For his part, Garrett emphasizes the fact that the plea agreement employed the crack-cocaine guideline range, which the district court initially "accepted," and the fact that the court ultimately said that it was imposing, and did impose, a sentence at the bottom end of that range.

In support of his position, Garrett cites *Freeman v. United States*, 131 S. Ct. 2685 (2011), a 4-1-4 decision with a controlling concurrence by Justice Sotomayor.  For the reasons explained below, that case appears to render the debate about "what the district court actually said and did" moot in the context of a Rule 11(c)(1)(C) plea agreement.  *Cf. United States v. Hameed*, 614 F.3d 259, 264 (6th Cir. 2010) ("In determining whether a sentence was 'based on' a subsequently

lowered guideline range in a plain-meaning sense of the words, we must consider whether the original sentence was, *in fact*, 'based on' such a range; that is, we look to what the district court actually said and did at the original sentencing." (citations and quotation marks omitted)). *Freeman* addressed the question under what circumstances, if any, a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement may be said to have been "based on" a sentencing range subsequently lowered by the Sentencing Commission, for purposes of § 3582(c)(2). *Freeman*, 131 S. Ct. at 2690.; *see also United States v. Bridgewater*, 539 F. App'x 685, 688 (6th Cir. 2013). Although Justice Sotomayor agreed with the plurality that, "in the normal course[,] the district judge's calculation of the Guidelines range . . . will serve as the basis for the term of imprisonment imposed," she held that "[s]entencing under [Rule 11(c)(1)](C) agreements" was "different." *Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring). The concurrence continued:

> The court may only accept or reject the agreement, and if it chooses to accept it, at sentencing the court may only impose the term of imprisonment the agreement calls for; the court may not change its terms. In the (C) agreement context, therefore, it is the binding plea agreement that is the foundation for the term of imprisonment to which the defendant is sentenced. At the moment of sentencing, the court simply implements the terms of the agreement it has already accepted. . . . The term of imprisonment imposed by the sentencing judge is dictated by the terms of the agreement entered into by the parties, not the judge's Guidelines calculation. In short, the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of § 3582(c)(2), "based on" the agreement itself.

*Id.* (Sotomayor, J., concurring) (citations omitted). The concurrence expressly rejected "the plurality's suggestion that § 3582(c)(2) should be understood to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Id.* at 2696–97 (Sotomayor, J., concurring) (citations omitted).

The upshot of Justice Sotomayor's concurrence appears to be that, in the Rule 11(c)(1)(C) context, what the sentencing judge said and did is largely irrelevant; instead, what matters is "the agreement itself." "As long as that sentencing range is evident from the agreement itself, for purposes of § 3582(c)(2) the term of imprisonment imposed by the court in accordance with that agreement is 'based on' that range." *Id.* at 2697–98 (Sotomayor, J., concurring). That holding is reiterated later in the opinion: "When a (C) agreement explicitly

employs a particular Guidelines sentencing range to establish the term of imprisonment, the agreement itself demonstrates the parties' intent that the imposed term of imprisonment will be based on that range, as required for sentence reduction under the statute." *Id.* at 2698 (Sotomayor, J., concurring). In other words, we apply a basic syllogism: if the sentence is based on a plea agreement, and the plea agreement relies on a given sentencing range, then the sentence is based on that range. The reason the syllogism holds true is that, under Rule 11(c)(1)(C), when the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case," that "recommendation or request binds the court once the court accepts the plea agreement." *See* Fed. R. Crim. P. 11(c)(1)(C).

If we take the district court at its word, the court does not appear to have based Garrett's sentence on the crack-cocaine guidelines. But, as mentioned, the *Freeman* concurrence appears to instruct us that, in the Rule 11 context, the district court's purported basis for its decision is irrelevant. Instead, the concurrence appears to instruct us that, in the Rule 11 context, we cannot conclude that the district court based its sentence on anything other than the plea agreement itself. *See Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring) ("In short, the term of imprisonment imposed pursuant to a (C) agreement is, for purposes of § 3582(c)(2), 'based on' the agreement itself.").

The question, then, is what sentencing range, if any, was "evident" from or "employ[ed]" by the agreement to "establish" the term of imprisonment to be imposed. Garrett's plea agreement with the government discusses two different ranges. First, it discusses the parties' agreement as to the appropriate calculation of Garrett's guideline range (¶ 2B of the agreement): "There are no sentencing guideline disputes. Except as provided below, defendant's guideline range is 151–188 months, as set forth in the attached worksheets." Second, it discusses the parties' agreement as to the range within which the district court must actually sentence Garrett:

> 4. Sentence
>
> The Court will impose a sentence pursuant to 18 U.S.C. § 3553, and in doing so must consider the sentencing guideline range.
>
> A. Imprisonment
>
> Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) the sentence of imprisonment in this case may not exceed the top of the sentencing guideline

range as determined by Paragraph 2B.  Pursuant to 21 U.S.C. § 841(b)(1)(A)(iii),
the Court **must** impose a mandatory minimum sentence of **120 months**.

The government argues that the agreement was "based on" a range of 120 months (the mandatory minimum) to 188 months (the top of the agreed-upon guideline range absent any permitted modifications) because the 120-to-188-month range was the range to which the district court was bound.  That is true.  The parties agreed on what the guideline range was— 151 to 188 months—but they did not agree that a sentence within that range was "the appropriate disposition of the case."  Rather, they agreed, citing Rule 11(c)(1)(C), that a sentence at or above the 120-month mandatory minimum, but at or below the top end of the guideline range (188 months), was the appropriate disposition.  As the government stated at sentencing: "The point of the Plea Agreement is that he is capped at 188 months."  Thus, the district court was constrained by Garrett's guideline range, as agreed to by the parties, only in that its sentence could not exceed the upper limit of that range; the district court was not bound by the low end of that range.

But the government is wrong to assume that Garrett's sentence was therefore not "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."  The range on which the sentence was immediately and directly based (120–188 months) was itself "based on a sentencing range that has subsequently been lowered by the Sentencing Commission" (151–188 months).  It follows that the sentence was based, at least in part (and there is no requirement that the lowered guideline range be the entire basis for the sentence), on the 151-to-188-month range.  One reasonable way to answer the question whether the sentence was "based on" the subsequently lowered guideline range is to ask whether the sentence—or more directly, the agreed-upon disposition in the plea agreement—would likely have been different had the guideline, as amended, been in place at the time of sentencing.  The answer is yes.  The upper bound of the sentencing range was the upper bound of the guideline range— 188 months—which was subsequently lowered by the Sentencing Commission when it reduced the total offense level for Garrett's offense by 4 levels.  This decrease would have yielded a reduced upper bound of 137 months.[1]  Thus, Garrett's revised guideline range would have been

---

[1]Garrett's original total offense level was 32.  That level was reduced 3 levels to 29 for acceptance of responsibility.  That total offense level, combined with a criminal history category of VI, produced a sentencing range of 151 to 188 months.  Garrett's new total offense level, based on the revised guideline, would

120 months (the mandatory minimum) to 137 months, and the agreed-upon disposition in the plea agreement would presumably have reflected that reduced range.

*Freeman* requires such a reading. In *Freeman*, the parties stipulated to a sentence of 106 months, at the bottom end of a range (106–117 months) that was "based on" a combination of the subsequently lowered guideline range (46–57 months) and a mandatory minimum 60-month sentence on another charge, to be served consecutively, that would ultimately have been incorporated within that range. *See* Joint Appendix in *Freeman v. United States*, 2010 WL 4928891, 26a (U.S. 2010) ("At the time of sentencing, the United States will . . . agree that a sentence of 106 months' incarceration is the appropriate disposition of this case."). In other words, the agreed-upon disposition—106 months—was "based on" a guideline range of 46–57 months that was subsequently lowered by the Sentencing Commission. Here, the agreed-upon disposition—120 to 188 months—was analogously "based on" a guideline range of 151 to 188 months that was subsequently lowered by the Commission.

## III

To summarize, under *Freeman*, when a defendant's sentence follows from a Rule 11(c)(1)(C) plea agreement, the district court is bound by that agreement if it accepts it, and the defendant's sentence is therefore "based on" that agreement. More specifically, under Rule 11(c)(1)(C), the defendant's sentence is based on any agreement "that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply." *See* Fed. R. Crim. P. 11(c)(1)(C). In such a case, for the defendant to be eligible for a sentence reduction under § 3582(c)(2), the agreement must "employ[] a particular Guidelines sentencing range to establish the term of imprisonment." *Freeman*, 131 S. Ct. at 2698 (Sotomayor, J., concurring).

Here, Garrett's sentence was based on a Rule 11(c)(1)(C) plea agreement in which the parties agreed on a sentence between 120 and 188 months. That agreement "employ[ed] a

have been 28, reduced 3 levels to 25 for acceptance of responsibility. That new total offense level, combined with his criminal history category of VI, would have yielded a sentencing range of 110–137 months before applying the 120-month mandatory minimum, and 120–137 months after applying the minimum. *See* U.S.S.G. § 2D1.1.

particular Guidelines sentencing range"—151 to 188 months—"to establish the term of imprisonment" by capping Garrett's sentence such that it could not exceed the upper end of that guideline range.   The range was subsequently lowered by the Sentencing Commission. Therefore, Garrett's sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

The second question was whether a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission."   *See* 18 U.S.C. § 3582(c)(2).   As explained earlier, a reduction is not consistent with the Commission's applicable policy statements if the amendment in question—here, Amendment 750—"does not have the effect of lowering the defendant's applicable guideline range."   U.S.S.G. § 1B1.10(a)(2)(B).  Garrett's applicable guideline range was 151–188 months, and Amendment 750 had the effect of lowering that range to 110–137 months before applying the mandatory minimum, and to 120–137 months after applying the minimum.   A reduction in Garrett's sentence would therefore not be inconsistent with the Commission's applicable policy statements.

Garrett's sentence thus satisfies the requirements of § 3582(c)(2).   The district court's decision to the contrary is therefore REVERSED and the case is REMANDED for further proceedings.