**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert David McNEESE, Defendant–**
**Appellant.**

No. 15–5548.

United States Court of Appeals,
Sixth Circuit.

April 18, 2016.

**ON BRIEF:** Ann C. Short, The Bosch Law Firm, P.C., Knoxville, Tennessee, for Appellant. David Wayne Taylor, United States Attorney's Office, Greeneville, Tennessee, for Appellee.

Before: BOGGS, SILER, and BATCHELDER, Circuit Judges.

## OPINION

BOGGS, Circuit Judge.

As a general rule, federal courts may not modify a defendant's sentence. 18 U.S.C. § 3582(c). A statutory exception to this basic tenet authorizes courts to reduce a sentence that is "based on" a sentencing range that was subsequently lowered by the United States Sentencing Commission ("Commission"). *Id.* § 3582(c)(2). But does that exception apply when a defendant was sentenced to a term of imprisonment set forth in a plea agreement executed pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C)? For years, this court held that a sentence based on a Rule 11(c)(1)(C) plea agreement could not be "based on" a sentencing range because Rule 11(c)(1)(C) "binds the [sentencing] court" to the agreed-upon sentence once the court accepts the plea agreement. Fed.R.Crim.P. 11(c)(1)(C). But in *Freeman v. United States*, 564 U.S. 522, 131 S.Ct. 2685, 180 L.Ed.2d 519 (2011), the Supreme Court held that a Rule 11(c)(1)(C) sentence may be "based on" a sentencing range for purposes of 18 U.S.C. § 3582(c)(2) if "the basis for the specified term is a Guidelines sentencing range" that is "evident from the [plea] agreement." *Id.* at 2697 (Sotomayor, J., concurring in the judgment). This case tests the boundaries of what it means for a sentence under a Rule 11(c)(1)(C) plea agreement to be "based on" a Guidelines range. Robert McNeese, a federal prisoner sentenced pursuant to such an agreement, moved the district court to reduce his sentence in light of a retroactive reduction to the Guidelines' base offense level for his drug offense. The district court denied the motion and McNeese appealed. Because McNeese's plea agreement makes no mention of a Guidelines sentencing range, nor is it evident in any other way from the agreement that his sentence is based on such a range, we affirm.

## I

### A

McNeese was a part owner of Corley's Pharmacy in Greeneville, Tennessee, where he also worked as a supervisory pharmacist. In July 2010, a man by the name of Chucky Copas visited Corley's Pharmacy to solicit sponsorships for a rodeo that he was supposedly organizing for the benefit of children with disabilities. McNeese agreed to sponsor the rodeo in exchange for a sign that would advertise his pharmacy at the event.

In the months that followed, Copas returned to McNeese several times to ask for money, which McNeese agreed to lend. Copas ultimately admitted to McNeese that he was addicted to opioids and had been using McNeese's money to buy drugs. Copas asked McNeese for help with his addiction, and McNeese obliged by giving Copas a few pills of buprenorphine—which physicians use to treat opioid addiction—to help him cope. After the pills sickened Copas, Copas's daughter called McNeese and explained that she was going to take her father to the hospital. McNeese told the woman to bring her father to the pharmacy instead, where

McNeese gave him one hundred oxycodone pills to alleviate his withdrawal symptoms.

After Copas finished the pills, he asked McNeese for more. Without accepting any money, McNeese obliged and continued to supply Copas, who consumed most of the pills and sold any remaining pills for $20 apiece. By March 2011, McNeese was providing Copas with between 100 and 150 pills twice weekly. When McNeese sought to end this arrangement, Copas threatened to go to the police. Wary of the consequences for himself and his family, McNeese decided to continue supplying Copas.

Word soon spread that McNeese was Copas's source of oxycodone, and in April, two of Copas's acquaintances, Scottie Leach and Jimmy Hodges, told McNeese that they planned to inform the police about his activities, ostensibly in an attempt to protect Copas from an overdose. McNeese mollified Leach and Hodges by providing them with approximately sixty to one hundred oxycodone pills twice weekly, which the men used and distributed to others.

By the end of July, McNeese "realized that things were out of control and [that] he could no longer live in this manner." McNeese revealed to his business partner that he had illegally provided Copas and others with oxycodone. McNeese then contacted law enforcement and provided officers with a recorded admission of his involvement. A subsequent DEA audit of Corley's Pharmacy uncovered a shortage of more than twenty thousand oxycodone pills.

### B

A federal grand jury subsequently indicted McNeese for conspiring to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), 846, distributing oxycodone, in violation of 21 U.S.C. § 841(a)(1), and false recordkeeping, in violation of 21 U.S.C. § 843(a)(4)(A). McNeese executed a written plea agreement, in which he agreed to plead guilty to the conspiracy charge. The agreement recounted that McNeese had cooperated with authorities and had stipulated to distributing at least 15,850 oxycodone pills, which the agreement mentioned "converts to" 2999.925 kilograms of marijuana. Pursuant to Rule 11(c)(1)(C), McNeese and the government agreed that a sentence of sixty-three months of imprisonment and a three-year term of supervised release would be an appropriate punishment for his crimes. The agreement mentioned that this sentence "takes into account the cooperation and assistance provided to law enforcement in this investigation." Aside from some language limiting the scope of McNeese's waiver of appeal, however, the plea agreement nowhere mentioned or adverted to the Sentencing Guidelines or any range of punishment from which the sixty-three-month sentence derived.

After McNeese and the government executed the plea agreement, the probation officer prepared a pre-sentence report in which he calculated McNeese's sentencing range. Relying primarily on the facts recounted in the plea agreement, the probation officer determined that McNeese had distributed oxycodone in an amount equivalent to 2999.925 kilograms of marijuana, resulting in a base offense level of thirty-two. The officer found that McNeese would be eligible for a two-level upward adjustment for abusing a position of public trust, see USSG § 3B1.3; for a three-level downward adjustment for accepting responsibility and assisting authorities, see USSG § 3E1.1(a)–(b); and for another two-level downward adjustment pursuant to the "safety-valve" provision in USSG § 2D1.1(b)(16) (2012). The resulting offense level of twenty-nine, together with

McNeese's criminal-history category of I, yielded a sentencing range of between 87 and 108 months of imprisonment.

At McNeese's sentencing hearing, the district court explained that it could either "accept the plea agreement and impose the agreed upon sentence or ... reject the plea agreement and give the defendant an opportunity to withdraw his guilty plea" and expressed its concern that the sixty-three-month sentence in the plea agreement might be inadequate. Speaking in defense of the agreed-upon sentence, the government explained that McNeese had taken responsibility for his actions and had assisted law enforcement and that "all that has been factored into this agreed upon sentence." The government went on to state that an additional "three level reduction was included into this overall agreement," which "would put [the plea agreement's sixty-three-month sentence] within [the Guidelines'] 63 to 78 month range" for an individual with an offense level of twenty-six and a criminal-history category of I. The court ultimately acknowledged that McNeese had "gotten the benefit of what in effect is a downward departure motion," accepted the plea agreement, and imposed a sentence of sixty-three months of imprisonment.

### C

In 2014, the Commission issued Amendment 782 to the Sentencing Guidelines, which lowered the base offense levels for various drug crimes, including the crime of distributing oxycodone. *See* USSG App. C. Amend. 782, at 64–71 (Supp.2014). The Commission also issued Amendment 788, which gave Amendment 782 retroactive effect. *See* USSG App. C. Amend. 788, at 86–87 (Supp.2014). After the two amendments took effect, McNeese filed a motion to reduce sentence pursuant to § 3582(c)(2), which allows a court to reduce a defendant's sentence if he "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).

The district court denied McNeese's motion. The court observed that his plea agreement made no mention of a sentencing range and therefore did not show that McNeese had been sentenced "based on a sentencing range." Though the court recognized that the prosecutor's remarks at the sentencing hearing clarified "[h]ow the Court was to get from [McNeese's base offense] level [of] 32 to a sentence of 63 months," the court observed that in cases involving Rule 11(c)(1)(C) plea agreements, the question whether a sentence was "based on a sentencing range" for purposes of § 3582(c)(2) may only be answered by reference to the plea agreement. Because McNeese's plea agreement did "not explicitly employ a sentencing range to establish the agreed-upon term of imprisonment," the court found that it lacked the authority to grant McNeese relief. This appeal followed.

### II

We ordinarily review for abuse of discretion a district court's denial of a § 3582(c)(2) motion to modify a sentence. *United States v. Payton,* 617 F.3d 911, 912 (6th Cir.2010). But where, as here, "the district court did not exercise its discretion in denying the motion [and] 'instead conclude[d] that it lacks the authority to reduce a defendant's sentence under the statute,'" our review is de novo. *Id.* at 913 (quoting *United States v. Curry,* 606 F.3d 323, 327 (6th Cir.2010)). As we explain, our independent review in this case leads us to the same conclusion, namely, that McNeese's sentence is not "based on" a Guidelines range and that he is therefore not entitled to relief.

## III

### A

Abrogating the general rule that sentences are final, 18 U.S.C. § 3582(c)(2) authorizes federal courts to reduce a prisoner's sentence if the sentence was based on a Guidelines range that a retroactive amendment has reduced. The provision reads:

The court may not modify a term of imprisonment once it has been imposed except that—

. . .

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the court may reduce the term of imprisonment, after considering the factors in section 3353(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Ibid.*

In *United States v. Peveler,* 359 F.3d 369 (6th Cir.2004), we adopted the view that a defendant who was sentenced pursuant to a Rule 11(c)(1)(C) plea agreement could not take advantage of § 3582(c)(2) because his sentence was not "based on a sentencing range" established by the Guidelines. *Id.* at 378–79. We reasoned that because a Rule 11(c)(1)(C) plea agreement "binds both the parties and the court," *id.* at 378, a Rule 11(c)(1)(C) sentence "rests on the parties' agreement, not on the calculation under the Sentencing Guidelines," thereby precluding relief under § 3582(c)(2), *ibid.* (quoting *United States v. Hemminger,* No. 96–2081, 1997 WL 235838, at *1 (7th Cir. May 2, 1997)). We applied this reasoning again in *United States v. Goins,* 355 Fed.Appx. 1 (6th Cir. 2009), in which we held that *Peveler* forbade William Freeman and his codefendant—both of whom had pleaded guilty to possession of crack cocaine among other crimes—from taking advantage of a Guidelines amendment that retroactively reduced the disparity in sentences for crack and powder-cocaine possession. *Id.* at 2–3.

The Supreme Court granted Freeman's petition for a writ of certiorari and reversed our decision in *Goins.* *Freeman,* 131 S.Ct. at 2695 (plurality opinion). Writing for a plurality of the Court, Justice Kennedy explained that Freeman's sentence was "based on" the Sentencing Guidelines. The plurality observed that a Rule 11(c)(1)(C) plea agreement "is contingent until the court accepts the agreement." *Id.* at 2692. Justice Kennedy reasoned that since "[f]ederal sentencing law requires a district judge *in every case* to impose 'a sentence sufficient, but not greater than necessary, to comply with' the purposes of federal sentencing, in light of the Guidelines and other . . . factors," *ibid.* (emphasis added) (quoting 18 U.S.C. § 3553(a)), the district court must "give due consideration to the relevant sentencing range, even if the defendant and prosecution recommend a specific sentence as a condition of the guilty plea," *ibid.* For this reason, a court's decision to accept a Rule 11(c)(1)(C) plea agreement "is likely to be based on the Guidelines," *id.* at 2695, and a district court may thus entertain § 3582(c)(2) motions in any case in which the defendant entered into a Rule 11(c)(1)(C) agreement so long as the district court consulted the Guidelines in the course of approving the agreement, *id.* at 2693.

In Freeman's case, the district court had calculated the relevant sentencing range, explained that it had considered that range, and expressed the view that the proposed sentence fell "within the guideline rang[e] and [was] sufficient to meet

the objectives of the law." *Ibid.* (first alteration in original). That record satisfied the *Freeman* plurality that "[t]he [district] court expressed its independent judgment that the sentence was appropriate in light of the applicable Guidelines range, and its decision was therefore 'based on' that range." *Ibid.*

Justice Sotomayor concurred in the judgment only. For Justice Sotomayor, a court must answer the question whether a sentence is "based on" a Guidelines sentencing range in Rule 11(c)(1)(C) cases by reference *to the plea agreement,* not the district court's reasons for accepting that agreement. *Id.* at 2695 (Sotomayor, J., concurring in the judgment). The Justice explained that "[a]t the moment of sentencing, the court simply implements the terms of the [Rule 11(c)(1)(C) ] agreement it has already accepted." *Id.* at 2696. But Justice Sotomayor cautioned that "[t]hese conclusions ... do not mean that a term of imprisonment imposed pursuant to a [Rule 11(c)(1)(C) ] agreement can *never* be reduced under § 3582(c)(2)." *Id.* at 2697. In the Justice's view, a Rule 11(c)(1)(C) agreement is "based on" the Guidelines in two situations: First, any such agreement that "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range" is always "based on" the Guidelines. *Ibid.* Second, a plea agreement that provides for a specific term of imprisonment is "based on" the Guidelines if it "make[s] clear that the basis for the specified term is a Guidelines sentencing range" that is "evident from the agreement itself." *Ibid.*

Because Freeman's plea agreement explicitly referenced the Sentencing Guidelines and established his offense level and criminal-history category, Justice Sotomayor determined that his sentence derived from a sentencing range that was "evident" from his plea agreement, and thus

agreed with the plurality that Freeman met the requirements of § 3582(c)(2). *Id.* at 2699–700.

**B**

We have identified Justice Sotomayor's concurring opinion as providing the framework that governs the inquiry into whether a defendant sentenced pursuant to a Rule 11(c)(1)(C) agreement qualifies for § 3582(c)(2) relief. *See United States v. Riley,* 726 F.3d 756, 760 (6th Cir.2013) (citing *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)); *United States v. Smith,* 658 F.3d 608, 611 (6th Cir.2011). Drawing on Justice Sotomayor's statement that a sentence is "based on" a Guidelines range if it is imposed pursuant to a Rule 11(c)(1)(C) plea agreement that "make[s] clear that the basis for the specified term is a Guidelines sentencing range" that is "evident from the agreement itself," *Freeman,* 131 S.Ct. at 2697 (Sotomayor, J., concurring in the judgment), McNeese argues that he may show that his sentence was "based on" a Guidelines range even though his plea agreement does not explicitly mention such a range. Appellant Br. 20.

McNeese's argument runs headlong into the law of this circuit. Applying Justice Sotomayor's framework, we have unequivocally held that "[a] defendant's sentence—for purposes of [§ 3582(c)(2) ]—is 'based on a guideline range *only when* that guideline range is *explicitly* referenced in a plea agreement.'" *United States v. Douglas,* 606 Fed.Appx. 287, 289–90 (6th Cir.2015) (quoting *Riley,* 726 F.3d at 760); *accord United States v. Bridgewater,* 539 Fed.Appx. 685, 688 (6th Cir.2013) (per curiam); *United States v. Collins,* 520 Fed. Appx. 434, 435 (6th Cir.2013) (per curiam). As that language suggests, the only cases in which we have found a Rule 11(c)(1)(C) sentence to be "based on" a Guidelines

sentencing range have been those in which the plea agreement explicitly referenced a such a range. *See United States v. Garrett,* 758 F.3d 749, 755–56 (6th Cir.2014); *Smith,* 658 F.3d at 613; *United States v. Taylor,* 427 Fed.Appx. 468, 469 (6th Cir. 2011) (per curiam). Because McNeese's plea agreement nowhere mentions a sentencing range, our precedents prevent him from availing himself of § 3582(c)(2).

McNeese protests that, as applied to his case, our requirement that a plea agreement explicitly reference a Guidelines sentencing range is inconsistent with the way in which Justice Sotomayor applied § 3582(c)(2) to the facts before the Court in *Freeman.* Freeman's plea agreement made clear that a "count to which Freeman agree[d] to plead guilty carries a minimum sentence of 60 months," to be served consecutively to any other sentence he received. *Freeman,* 131 S.Ct. at 2699 (Sotomayor, J., concurring in the judgment). Aside from reciting the agreed-upon sentence of 106 months, however, the agreement did not mention any other sentence or a sentencing range, leaving "46 months unaccounted for." *Ibid.* As McNeese points out, Justice Sotomayor used Freeman's offense level and criminal-history category to independently calculate a sentencing range of forty-six to fifty-seven months. *Ibid.* The Justice concluded that it was "evident" from this information that "Freeman's agreement employed the 46–month figure at the bottom of this sentencing range, in combination with the 60–month mandatory minimum ... to establish his 106–month sentence." *Id.* at 2700.

McNeese suggests that his plea agreement, just as Freeman's plea agreement, makes clear that his sentence derived from a Guidelines range. McNeese observes that the probation officer "easily calculated" McNeese's total offense level of twenty-nine using facts in the plea agreement.

Appellant Br. 20. He also suggests that even though the plea agreement does not recite McNeese's criminal-history score, the parties "certainly knew that fact" and "in all likelihood," so did the district court. *Id.* at 20 n. 3. As for why the plea agreement calls for a sentence of sixty-three months of imprisonment when a defendant with McNeese's offense level and criminal-history score would face a minimum Guidelines sentence of eighty-seven months, McNeese explains that it is "clea[r]" that the plea agreement's mention of McNeese's "cooperation and assistance" refers to a three-level downward departure that the government would have requested pursuant to USSG § 5K1.1, leaving him with an offense level of twenty-six and a minimum Guidelines sentence of sixty-three months of imprisonment. *Id.* at 23.

McNeese's argument overlooks two related and equally problematic realities. The first is that no sentencing range is "evident" from his plea agreement. It is surely possible that one could guess McNeese's base offense level by using the amount of marijuana-equivalent mentioned in his plea agreement. But whereas Freeman's plea agreement gave Justice Sotomayor *all* of the tools necessary to calculate a Guidelines sentencing range— namely, an offense level and a criminal-history category—McNeese's plea agreement does not. The plea agreement says nothing about McNeese's criminal-history category, and we may not speculate as to what the parties might have known about McNeese's criminal history; the *Freeman* concurrence explicitly warned that a "reviewing court must necessarily look to the agreement itself," in order to avoid a "free-ranging search through the parties' negotiating history in search of a Guidelines sentencing range that might have been relevant." *Freeman,* 131 S.Ct. at 2697, 2698 n. 2 (Sotomayor, J., concurring in the judgment).

The second difficulty is Justice Sotomayor's statement that a plea agreement must *"make clear* that the basis for the specified term is [the referenced] Guidelines sentencing range." *Id.* at 2697 (emphasis added). Unlike Freeman's plea agreement, which *explicitly* referenced the Sentencing Guidelines, *see id.* at 2699 ("The agreement states that Freeman 'agrees to have his sentence determined pursuant to the Sentencing Guidelines.'"), the relevant part of McNeese's plea agreement nowhere references the Guidelines, leaving no indication that his sixty-three-month sentence had anything to do with the Guidelines. This is exactly the kind of case that Justice Sotomayor explained does not satisfy § 3582(c)(2) because "if a [Rule 11(c)(1)(C)] agreement 'does not contain any references to the Guidelines,' there is no way of knowing whether the agreement 'use[d] a Guidelines sentencing range to establish the term of imprisonment.'" *Id.* at 2700 n. 9 (second alteration in original) (quoting *id.* at 2704 (Roberts, C.J., dissenting)).

McNeese responds that the facts recited in his plea agreement clearly show that his sixty-three-month sentence derives from a Guidelines sentencing range of sixty-three to eighty-seven months. Appellant Br. 20–21. But as we have explained, the absence of any mention of McNeese's criminal-history score makes the calculation of a sentencing range impossible from the facts contained in his plea agreement. And even if that problem could be solved, McNeese would have to contend with the reality that his plea agreement does not explain why his offense level would be reduced from a base of thirty-two to twenty-six. The plea agreement nowhere suggests that McNeese was eligible for the safety-valve adjustment in USSG § 2D1.1(b)(16) (2012). And while one might have speculated that McNeese's abuse of his position would prompt a two-

level upward adjustment under § 3B1.3 and his assistance a three-level downward adjustment under § 3E1.1(a)–(b), it would have required clairvoyance to conclude that McNeese was also entitled to a downward adjustment of exactly three levels under the flexible downward-departure provision of § 5K1.1.

In short, McNeese's argument that his plea agreement evidences and relies upon a Guidelines sentencing range would require this court to make assumptions about what the parties might have known while negotiating and speculate about what might have motivated them when they put pen to paper. As we have explained, that is exactly what Justice Sotomayor warned courts not to do. *See Freeman,* 131 S.Ct. at 2697 (Sotomayor, J., concurring in the judgment).

It is true that the prosecutor's remarks at the sentencing hearing—together with the pre-sentence report prepared by the probation officer—make clear that by the end of the sentencing hearing, McNeese, the government, and the district court all understood that the agreed-upon sentence did in fact derive from a Guidelines sentencing range. But nothing in the *Freeman* concurrence suggests that the parties' knowledge, unexpressed or later expressed, should make any difference so long as a "sentencing range is [not] evident from the agreement itself." *Ibid.* What is more, our precedents strongly counsel us to disregard any remarks made at a sentencing hearing in this context. *See Garrett,* 758 F.3d at 754 ("[*Freeman*] appears to render the debate about 'what the district court actually said and did' moot in the context of a Rule 11(c)(1)(C) plea agreement."); *Smith,* 658 F.3d at 612 ("Justice Sotomayor in fact rejected the idea that courts can consider parol evidence to as-

certain whether the sentence in the plea agreement is based on the Guidelines.").

Not content with this result, McNeese points out that in *United States v. Garrett*, 758 F.3d 749 (6th Cir.2014), we held that Malcolm Garrett qualified for § 3582(c)(2) relief because his plea agreement showed that "the sentence was based, *at least in part*" on a Guidelines range. Appellant Br. 25 (quoting *Garrett*, 758 F.3d at 756 (emphasis added)). He submits that his case is like Garrett's, since the stipulated marijuana-equivalent amount of oxycodone showed that the plea agreement's sentence was based in part on § 2D1.1's drug-quantity table, which establishes the base offense level for distributing between one thousand and three thousand kilograms of marijuana. *See* USSG § 2D1.1(c)(4) (2012). But unlike Garrett's plea agreement, which explicitly mentioned a Guidelines range that the plea agreement used to supply the "upper bound of the [plea agreement's] sentencing range," *Garrett*, 758 F.3d at 756, the relevant part of McNeese's plea agreement never mentioned the Guidelines or a sentencing range, leaving it wholly unstated what role, if any, § 2D1.1(c) played in the computation of the agreed-upon sentence.

With *Freeman* and the law of this circuit on the government's side, McNeese concludes with an argument for lenity. McNeese submits that his plea agreement is ambiguous and should therefore be construed against the government. Appellant Br. 27. In support of this point, McNeese draws upon *United States v. Brown*, 793 F.3d 900 (8th Cir.2015) (per curiam), where the Eighth Circuit held that an ambiguous Rule 11(c)(1)(C) agreement should be construed in favor of the prisoner, *id.* at 901. *See* Appellant Br. 28.

But the Eighth Circuit's opinion in *Brown* does not support a relaxed application of *Freeman* in "ambiguous" cases, nor

could it. *See United States v. Long*, 757 F.3d 762, 764 (8th Cir.2014) ("Only if the Rule 11(c)(1)(C) agreement '*expressly* uses a Guidelines sentencing range . . .' can it be said the resulting sentence 'is based on the range employed.' " (quoting *Freeman*, 131 S.Ct. at 2695 (Sotomayor, J., concurring in the judgment))). At several points, the plea agreement at issue in *Brown* called for a sentence that was for "the greater of the minimum sentence under the U.S.S.G. range as determined by the District Court or 100 months." Brief of Appellant at viii, *Brown*, 793 F.3d 900 (No. 15–1437), 2015 WL 1206053. But "in at least one of those instances, the parties intentionally struck the portion stipulating that 'the greater of the minimum sentence under the U.S.S.G. range as determined by the District Court,' leaving only 'the parties['] agreement to a sentence of '100 months.' " Brief of Plaintiff–Appellee at 14, *Brown*, 793 F.3d 900 (No. 15–1437), 2015 WL 1611867. The Eighth Circuit "reject[ed] the government's contention . . . that an uninitialed partial alteration of the plea agreement can establish that Justice Sotomayor's controlling opinion in *Freeman* does not squarely apply," and in support of *that* point, concluded that "[i]n any event," any ambiguity is "construed against the government." *Brown*, 793 F.3d at 901 (quoting *United States v. Lewis*, 673 F.3d 758, 763 (8th Cir.2011)).

By contrast, McNeese's plea agreement includes *no* reference to a Guidelines range or, for that matter, to § 2D1.1(c). And while we might ordinarily construe ambiguous provisions in plea agreements against the government, *United States v. Randolph*, 230 F.3d 243, 248 (6th Cir. 2000), in this context, any ambiguity about whether McNeese's plea agreement makes such a reference would only strengthen the government's position, since it is hard to see how an ambiguous reference could

be "explici[t]" or "expres[s]," *Riley,* 726 F.3d at 760.

## IV

Because McNeese cannot show any reference to a Guidelines sentencing range in his Rule 11(c)(1)(C) plea agreement, he cannot show that his sentence was "based on" a sentencing range established by the Guidelines, as he must in order to obtain the benefit of a retroactive amendment to the Guidelines. As we have explained, nothing in *Freeman* requires a different result. For the reasons given, we AFFIRM the order of the district court denying McNeese's motion for a sentence reduction.