NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0433n.06

Case No. 15-6240

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 29, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff – Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COREY FERGUSON, | ) | KENTUCKY |
| | ) | |
| Defendant – Appellant. | ) | |
| | ) | OPINION |
| | ) | |

BEFORE: SUTTON, GRIFFIN, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Corey Ferguson appeals the district court's denial of his motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). Ferguson essentially argues that he is eligible for a sentence reduction based on Amendment 782 to the United States Sentencing Guidelines. However, the district court sentenced Ferguson based on the career offender Guidelines, which are not subject to Amendment 782. Thus, we **AFFIRM** the district court's judgment.

I.

On August 15, 1991, Corey James Ferguson, then 20 years old, sold a one-eighth ounce bag of cocaine to a confidential informant. When police later arrested Ferguson, they found drug paraphernalia during a search of his apartment. As a result, on January 17, 1992, Ferguson

pleaded guilty in state court to trafficking in a controlled substance. He received a five-year suspended sentence and was placed on supervised probation.

Three years later, Ferguson was pulled over for a routine traffic violation. Ferguson consented to a search of his car, and police found a large amount of cocaine under the passenger seat. Based on that discovery, on August 31, 1995, Ferguson again pleaded guilty in state court to trafficking in a controlled substance. He received an eight-year sentence, but he was paroled after almost three years' imprisonment.

In 2005, law enforcement officials began investigating drug-trafficking activities in Bowling Green, Kentucky. That investigation yielded evidence that Ferguson was a major supplier to the Bowling Green area. Police eventually arrested Ferguson and nine others in connection to the investigation. While his codefendants all accepted plea agreements, Ferguson instead opted to go to trial. On June 12, 2007, a jury found Ferguson guilty of (1) conspiracy to possess with intent to distribute 500 grams or more of cocaine and (2) distributing cocaine.

Ferguson's presentence investigation report ("PSR") indicated a base offense level of 26 and a criminal history category of IV. However, because Ferguson's two prior felony drug convictions qualified him for career offender status, the PSR raised his recommended offense level to 37 and his criminal history category to VI. Ferguson's resulting sentencing Guidelines range was 360 months to life imprisonment.

The district court accepted the PSR's recommendations. Ferguson argued for a downward variance to avoid any disparity in sentencing with his codefendants, which the district court granted. The district court found Ferguson to be a career offender, but it sentenced him below the applicable Guidelines range to 300 months of imprisonment.

In September 2015, Ferguson moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), arguing that his age, maturity, model record while in prison, deep remorse, as well as the declining health of his parents all warranted a sentence reduction. Ferguson later supplemented his motion, specifying that he sought a reduction in accordance with Amendment 782. On October 27, 2015, the district court denied Ferguson's motion. The court explained that the career offender Guidelines it used to sentence Ferguson were not subject to Amendment 782. Ferguson appeals.

## II.

A district court may adjust a term of imprisonment if that court based the original sentence on Guidelines that the Sentencing Commission has subsequently lowered. 18 U.S.C. § 3582(c)(2). We review de novo a district court's determination that it lacks the authority to reduce a defendant's sentence under 18 U.S.C. § 3582(c)(2). *United States v. Riley*, 726 F.3d 756, 758 (6th Cir. 2013) (labeling such a question as one of law).

## A.

In 1984, as part of the Comprehensive Crime Control Act, Congress passed the Sentencing Reform Act. Pub. L. No. 98-473, ch. II (1984). The statute created the United States Sentencing Commission, an agency of the judicial branch responsible for setting criminal Sentencing Guidelines. *See generally Mistretta v. United States*, 488 U.S. 361, 363-70 (1989) (discussing the background, purpose, and operation of the Act and the Commission). Congress required "that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for a defendant found guilty of a crime of violence or drug trafficking when he had two or more prior felony convictions for crimes of violence and/or drug trafficking. *United States v. Tanner*, 888 F.2d 1392 (6th Cir. 1989); *see* 28 U.S.C. § 991. The

Commission complied with Congress's mandate by promulgating the career offender guidelines under USSG § 4B1.1.

Two years later, Congress passed the Anti-Drug Abuse Act of 1986, which set penalties for crimes involving the sale or manufacture of crack cocaine one hundred times higher than for equivalent crimes involving powder cocaine. *See Kimbrough v. United States*, 552 U.S. 85, 95–96 (2007). In 2010, Congress reduced this discrepancy in the Fair Sentencing Act, which lowered the crack/powder cocaine sentencing ratio from 100:1 to 18:1. USSG § 2D1.1; *United States v. Jackson*, 678 F.3d 442, 443 (6th Cir. 2012).

In 2014, the Commission passed Amendment 782, which lowered the base offense level for most drug trafficking crimes, and Amendment 788, which made Amendment 782 retroactive. *United States v. Lucas*, 636 F. App'x 296, 297–98 (6th Cir. 2016). The Sentencing Commission estimated that, subject to a district court's discretion, approximately 46,000 inmates could benefit from Amendment 782, with an average sentence reduction of approximately eighteen percent. USSG Suppl. to App. C. amend. 788 at 87. However, Amendment 782 does not impact the career offender Guidelines found in USSG § 4B1.1. *United States v. Snow*, 634 F. App'x 569, 573 (6th Cir. 2016).

Ferguson asserts that the district court sentenced him under the drug trafficking Guidelines in USSG § 2D1.1—not the career offender Guidelines in USSG § 4B1.l. He maintains that under *Jackson*, 678 F.3d at 444, we must look at the actual range the district court applied and not necessarily what Guidelines the court claimed to apply. Thus, he argues that because his 300-month sentence falls within the range of his pre-career offender category (292 to

365 months) but outside of the range of his career offender category (360 months to life), he was clearly not sentenced as a career offender.[1] *See* USSG ch. 5, pt. A (Table).

On the other hand, the government argues that the district court unmistakably sentenced Ferguson pursuant to the career offender Guidelines. The government notes that the PSR—which the court adopted—raised Ferguson's sentencing Guidelines range based on his career offender status. Additionally, the government also notes that at sentencing, the district court expressly stated that Ferguson's sentence was based on the career offender Guidelines.

While Ferguson's supplement of his motion for a reduced sentence in the district court was "under the authorization of Amendment 782," R. 638, PageID # 4067, on appeal, he references only the "crack cocaine guidelines" and the Fair Sentencing Act, the statute that corresponds to Amendment 750. *E.g.*, Appellant Br. 12 ("In 2010, Congress, recognizing the inequities of the crack and cocaine powder disparity, passed the Fair Sentencing Act."). Amendment 750 affords Ferguson no relief, as it changed the penalties for crack cocaine, and Ferguson's offense level was based on trafficking in *powder* cocaine.

Further, Ferguson's reliance on *Jackson* is misplaced. 678 F.3d at 444. In *Jackson*, the district court delayed sentencing, knowing that the Fair Sentencing Act was pending in Congress and would reduce the defendant's Guidelines range. *Id.* at 443. However, after a year of waiting for Congress to act, the court finally sentenced the defendant. *Id.* The court acknowledged the defendant's career offender status, but because of its abhorrence of the 100:1 crack/powder cocaine sentencing disparity, the court granted a downward variance. The variance placed the defendant within the Guidelines range for non-career offenders. *Id.* at 443–44 (noting that in the sentencing transcript, the court calls the crack versus powder cocaine disparity "untenable").

---

[1] Ferguson assumes an offense level of 37 in his calculations.

Less than three weeks after the sentencing hearing, Congress passed the Fair Sentencing Act. *Id.* at 443.

On direct appeal, we determined that because the district court lowered Jackson's sentence based on its disagreement with the drug Guidelines, Jackson's sentence relied as much on the drug Guidelines as on the career offender Guidelines. *Id.* at 445. We remanded for resentencing in light of the Fair Sentencing Act's changes to the drug Guidelines. *Id.* at 445–46.

*Jackson* was an atypical case, and we have yet to stretch its holding beyond its unique context. *See, e.g.*, *United States v. Tate*, 570 F. App'x 517, 521 (6th Cir. 2014) ("This case is readily distinguishable from *Jackson* . . . ."); *Riley*, 726 F.3d at 761 ("Riley's case does not come to us in the unusual procedural posture of Jackson's . . . ."); *United States v. Wherry*, 518 F. App'x 434, 438 (6th Cir. 2013) ("*Jackson* is a unique case, punctuated by anomalous factual findings that are not found here.").

We decline to apply *Jackson* here as well. Below, the court granted a downward variance because it believed the *career offender* Guidelines were too harsh. Indeed, the court stated, "[W]hen I talk about [the other] career offenders [codefendants], and that the . . . next [highest] level I gave I think was 240 months . . . to avoid any disparity, I'm going to give 300 months in this case." R. 495, Page ID #3096. Further, while here the court imposed a sentence outside of the Guidelines, it did not impose a sentence within the drug Guidelines as the court in *Jackson* did. But for his career offender status, Ferguson's offense level would have been 26 and his criminal history in category IV, which would have yielded a Guidelines range of 92 to 115 months of imprisonment. *See* USSG ch. 5, pt. A (Table). If Ferguson had been sentenced as he claims, the court would have made an *upward* variance, tripling Ferguson's recommended sentence. The sentencing transcript does not support that inference.

Ferguson had two drug convictions before he was twenty four years old. Those two convictions cost him roughly seventeen years of his life. *See* USSG ch. 5, pt. A (Table). Legislation like the Fair Sentencing Act indicates Congress' will to move away from protracted prison sentences for nonviolent drug offenses. It demonstrates Congress' desire to clear prisons of inmates who committed crimes where "[t]here is no victim . . . other than society at large." *See* USSG Suppl. to App. C. amend. 788 at 87 (indicating "the Commission's determination that setting the base offense levels above mandatory minimum penalties is no longer necessary"). Whether the Guidelines for drug crimes and career offenders are still overzealous, though, is not at issue in this case. The Sentencing Commission estimated Amendment 782 could benefit 46,000 federal inmates convicted on drug charges. Unfortunately for Corey Ferguson, he is not among them.

III.

For the foregoing reasons, we **AFFIRM** the district court's judgment.